IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Clarence Austin Harrison, | ) | Civil Action No.:2:14-cv-3801-BHH-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Tim Riley, | ) | |
| | ) | |
| Respondent. | ) | |

 The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 18; see also Dkt. No. 17.)

 Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

 The Petitioner brought the instant habeas action in September of 2014. (See Dkt. No. 1; Dkt. No. 1-2.) On February 3, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 18; see also Dkt. No. 17.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about March 13, 2015. (Dkt. No. 21.)

## PROCEDURAL HISTORY

 The Petitioner is currently confined at Tyger River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In March of 2006, the Abbeville County Grand Jury indicted Petitioner for assault and battery with intent to kill, attempted armed robbery, and possession of a firearm or knife during the commission of a violent crime. (See Dkt. No. 17-18.) Plaintiff was represented by Charles Grose, Esquire, and Alex Buergey, Esquire. (See R. at 1.) Petitioner, along with his co-defendant Alti Monte Livingston Haskell, proceeded to a jury trial before the Honorable Roger Couch on March 20 through March 23 of 2006. (R. at 1-673.) On March 23, 2006, the jury convicted Petitioner as charged. (See R. at 660-61.) Judge Couch sentenced Petitioner to twenty years

on the conviction for armed robbery, twenty years on the conviction for assault and battery with intent to kill, and five years on the conviction for possession of a weapon during the commission of a violent crime. (R. at 671-72.) The three sentences were set to run concurrently. (See R. at 671-72.)

Petitioner appealed and was represented by Kathrine H. Hudgins, Esquire, of the South Carolina Commission on Indigent Defense. (See Dkt. No. 17-4.) In his Final Brief of Appellant, Petitioner raised the following issues:

> 1. Did the judge err in refusing to grant a mistrial when the witness testified before the jury that appellant had just been released from jail?
>
> 2. Did the judge err in refusing to grant a mistrial when a witness for the State testified that the solicitor told her, prior to her testimony before the jury, that she could not assert her Fifth Amendment right against self incrimination?
>
> 3. Did the judge err in instructing the jury that assault and battery of a high and aggravated nature contains all the elements of assault and battery with intent to kill with the exception of malice aforethought?

(Dkt. No. 17-4 at 4 of 15.) In an unpublished opinion filed on February 11, 2009, the South Carolina Court of Appeals affirmed the judgment of the lower court. (See Dkt. No. 17-6.) Petitioner filed a petition for rehearing; in an Order dated March 24, 2009, the South Carolina Court of Appeals denied that petition. (See Dkt. No. 17-7; Dkt. No. 17-8.)

Petitioner, through counsel Ms. Hudgins, filed a petition for a writ of certiorari. (See Dkt. No. 17-9.) Therein, she raised the following issues:

> 1. Did the Court of Appeals err in affirming the trial judge's error in instructing the jury that assault and battery of a high and aggravated nature contains all of the elements of assault and battery with intent to kill with the exception of malice aforethought?
>
> 2. Did the Court of Appeals err in affirming the trial judge's error in refusing to grant a mistrial when the witness testified before the jury that appellant had just been released from jail?
>
> 3. Did the Court of [A]ppeals err in affirming the trial judge's error in refusing to grant a mistrial when a witness for the State testified that the solicitor told her, prior to her testimony before the jury, that she could not assert her Fifth Amendment right against self incrimination?

2

(Dkt. No. 17-9 at 4 of 14.) The Supreme Court of South Carolina denied the petition on April 8, 2010. (See Dkt. No. 17-11.) The matter was remitted to the lower court on April 12, 2010. (Dkt. No. 17-12.)

On December 16, 2010, Petitioner filed an application for post-conviction relief ("PCR") and supplemented that application several times thereafter. (See R. at 675-88.) Petitioner raised the following grounds for relief in his application (and its subsequent amendments):

A. Ineffective Assistance of Counsel

1) Applicant was denied the effective assistance of trial counsel . . . when counsel Charles Grose moved to enter hearsay statement for the purpose of showing the state of mind of investigating officer.

2) Applicant was denied the effective assistance of trial counsel . . . when he fail[ed] to object to Sgt. Raymond Vandiver was recalled to the stand for impeachment of the State's witnesses who under oath recanted the out-of-court statements that was given to law enforcement.

3) Applicant was denied the effective assistance of appellate counsel . . . when appellate counsel fail[ed] to raise an issue on direct appeal that [the] prosecutor made an improper closing argument. . . . The improper closing argument shifts the burden of proof. . . .

4) Applicant was denied the effective assistance of counsel . . . when counsel Grose failed to ask the trial court to dismiss the statements allegedly given by State's witnesses a day before, and the morning of trial. . . .

B. Confrontation Clause violation

A personal examination of Torey Brown was needed to give Applicant the opportunity not only of testing the recollection and sifting conscience of the witness, and compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. . . .

(R. at 680, 682-85.) Petitioner also asserted trial counsel was ineffective for the following reasons:

Counsel failed to effectively represent Petitioner by: failing to call a subpoenaed witness who had information regarding Torey Brown's connection to the state's

3

witnesses; bringing in a prejudicial statement that implicated Petitioner in criminal activity; failing to object to reference to prior bad acts in the indictments; and failing to raise issue on appeal involving an overruled objection to a statement made by the prosecutor during closing argument.

(R. at 687.)

On June 7, 2012, an evidentiary hearing was held before the Honorable Thomas A. Russo. (R. at 693-764.) Petitioner was present and represented by Jennings B. Anderson, Esquire. (See R. at 693.) In an order dated August 6, 2012, Judge Russo denied the application for post-conviction relief and dismissed the petition. (R. at 765-76.)

Petitioner, through his attorney Jennings B. Anderson, filed a <u>Johnson</u> Petition for Writ of Certiorari on September 17, 2013. (<u>See</u> Dkt. No. 17-14.)[1] Through counsel, Petitioner raised the following issue:

> Whether Appellant's trial counsel was ineffective for failing to renew an objection to the prosecuting attorney's repeated interjection of the prosecuting attorney's credibility, thereby in essence becoming a witness for the State.

(Dkt. No. 17-14 at 4 of 10.) Mr. Anderson also filed a petition to be relieved as counsel. (<u>See</u> Dkt. No. 17-14 at 9-10 of 10.) Petitioner filed a *pro se* response to the <u>Johnson</u> petition. (<u>See</u> Dkt. No. 17-15.) The South Carolina Supreme Court entered an order denying the petition for a writ of certiorari on August 21, 2014. (Dkt. No. 22.) The matter was remitted to the lower court on September 8, 2014. (Dkt. No. 17-16.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **Ground One**: Denial of fair trial due to judicial error.
> **Supporting facts**: During the voir dire of the jury there was testimony in reference to the petitioner history of being incarcerated, which inflamed the minds of the jurors to return a guilty verdict. This matter was also in the body of the indictment that was submitted to the jury to deliberate on. This testimony and language clearly implies that petitioner had already been convicted of these charges of the indictment.

---

[1] <u>See Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988).

4

**Ground Two**: Violation of the Confrontation Clause (ineffective assistance of counsel).
**Supporting facts**: Counsel introduced a statement from an alleged witness of the crime during the cross-examination of Lieutenant Smith which was hearsay-within-hearsay. Petitioner never had an opportunity to question this witness about this statement because he did not testify at trial which is a violation of his right to confront his accuser. The victim testified that he was unaware of who shot him.

**Ground Three**: Ineffective assistance of counsel for not objecting to the solicitor becoming a witness.
**Supporting facts**: In response to the witnesses' changing their testimony from their prior statement the prosecutor proceeded to impermissibly interject his own credibility against the witnesses. The records demonstrates no less than fourteen instances of such conduct, but counsel never made any objections. This made the jury focus on the credibility of the State and not the evidence that was to determine Petitioner's guilt or innocence.

**Ground Four**: Denial of fair trial due to judicial error in regards to jury charges.
**Supporting facts**: The judge gave a jury charge concerning the definition of malice as it relates to assault and battery with intent to kill. This puts the mindset of the Defendant in issue as opposed to the evidence.

(Dkt. No. 1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 18; see also Dkt. No. 17.) For the reasons set forth herein, the undersigned recommends granting Respondent's motion.

**A.**    **Ground One**

Petitioner asserts in Ground One that he was denied a fair trial "due to judicial error." (Dkt. No. 1.) Petitioner states,

> During the voir dire of the jury there was testimony in reference to the petitioner history of being incarcerated, which inflamed the minds of the jurors to return a guilty verdict. This matter was also in the body of the indictment that was submitted to the jury to deliberate on. This testimony and language clearly implies that petitioner had already been convicted of these charges of the indictment.

(Dkt. No. 1.) In his Motion for Summary Judgment, Respondent contends that Ground One "was not exhausted because it was not presented to the state supreme court on direct appeal." (Dkt. No. 17 at 11.) Respondent states,

> On direct appeal, [Petitioner] argued that a witness, Roderick Gartrell, was erroneously permitted to testify that Petitioner (a/k/a "Blue") "had just got out of jail." He did not contend that either the indictment or voir dire suggested that he had a prior conviction. See Final Brief of Appellant, Issue 1, pp. 5-7; Petition for Writ of Certiorari, Issue 2, pp. 6-8.

(Dkt. No. 17 at 11.)

The undersigned recommends granting summary judgment to Respondent on Ground One. "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (quoting McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000)); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In the instant case, counsel did not make any objections during *voir dire*, nor did Petitioner raise any issue related to *voir dire* on direct appeal. (See Dkt. No. 17-4; see also R. at 13-37.) Accordingly, the undersigned agrees with Respondent that Ground One is procedurally barred. See State v. Hoffman, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (an issue which is not preserved cannot be raised for the first time on appeal); Drayton v. Evatt, 312 S.C. 4, 9, 430 S.E.2d 517, 520 (1993) ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel."); Simmons

v. State, 264 S.C. 417, 420-23, 215 S.E.2d 883-86 (1975) (concluding the following two issues were direct appeal issues, and therefore not properly raised in the post-conviction relief proceeding: "Whether the Trial Judge's rebuke of trial counsel constituted prejudicial error?" and "Whether it was prejudicial error for the Trial Judge to permit comment by the solicitor on Appellant's failure to call his wife as a witness when she was unavailable?"); see also McClurkin v. Stevenson, Civ. A. No. 0:08-0106-TLW-PJG, 2009 WL 764964, at *9 (D.S.C. Mar. 20, 2009) (concluding the petitioner procedurally defaulted on claim that the trial court erred in failing to grant a mistrial where "the Court of Appeals found that [petitioner] did not satisfy the procedural requirements to preserve this issue for appeal").

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, Bousley v. United States, 523 U.S. 614, 623 (1998); see also Schlup v. Delo, 513 U.S. 298, 327 (1995), or abandonment by counsel. Maples v. Thomas, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)).

In his Response in Opposition to the Motion for Summary Judgment, Petitioner appears to change course and contends he raised the issue as a claim of ineffective assistance of counsel. (See Dkt. No. 21 at 2 of 5.) He cites Martinez and asserts that "both of these counsels should be held liable for the procedural default of this issue if it is determined that it is" defaulted. (Id.) Pursuant to Martinez, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 132 S. Ct. at 1315. Of course, Ground One–at least as raised in his habeas petition–is not an ineffective assistance of counsel claim; Martinez therefore does not excuse the default. See Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) ("Because Gore's claim is not procedurally barred and it does not raise an allegation of ineffective assistance of trial counsel, Martinez by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b)."); Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013) ("Under Martinez's unambiguous holding our previous understanding of Coleman in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); see also Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in Martinez. Instead, his claims fall under the general Coleman rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

To the extent Petitioner attempts to couch Ground One as an ineffective assistance of trial counsel claim, Petitioner did not present this claim during his post-conviction relief proceedings. Such a claim is therefore barred. And, to the extent Petitioner cites Martinez in an attempt to excuse the procedural default, that attempt should be rejected. Petitioner testified during his PCR hearing that he objected to Count One of the indictment. (See R. at 712.) Specifically, he testified as follows during the hearing:

Q. All right. Now, what is your particular objection to this indictment?

A. That it's stating I was or were convicted of committing a crime or attempting to commit a crime; said the violent crime, assault and battery, intent to kill; attempted robbery; and possession of a firearm, commission of a crime.

Q. All right. To quote that exact language, you're talking about the portion of the indictment that says, quote: And the said defendants was/were convicted of committing or attempting to commit the said violent crime: assault and battery with intent to kill and/or attempted armed robbery or any lesser-included violent offense, end quote. Is that right?

A. Yes, sir.

Q. All right. Now, you heard the judge tell the jury that they couldn't use these indictments to infer your guilt, didn't you?

A. Yes.

Q. Okay. Now, despite that, what do you think the effect of this indictment was on the jury?

A. In my transcript, it's a guy that, through the jury pool or whatever, he got up and he said that: "Already got you guys. Judge, I hate a thief," something along those lines. So hearing these indictments alone, from my understanding that it's implement [sic] me in a crime that I had never committed before. So being that the jury is ignorant to the law, they led me to believe that me and my codefendant had already committed these crimes before and we probably would do it again.

Q. And that's based on what you heard a potential juror say during the drawing of the jury; is that right?

A. Yes.

(R. at 712-13.)

Prior to the trial judge reading the indictments, the judge instructed the jury as follows:

Now, ladies and gentlemen of the jury panel, I'm going to go over with you now some documents which have been presented to this Court. The documents which I have in front of me are documents which are called indictments.

Indictments are documents which are issued by the Abbeville County Grand Jury to this Court. They inform this Court of the charge that is brought against the defendant in question. They also inform the defendant of the charges that have been lodged against him.

**An indictment cannot be used by any juror in any fashion to determine the guilt or the innocence of a person who is before this Court**. It is simply the formal written document, again, that brings the charge to this Court, informs us of the

charge which is to be tried and informs the defendant of the charges lodged against him.

(R. at 13-14 (emphasis added).) When Juror Number 127 advised the trial judge that he had "judged [the defendants] guilty right now," the judge excused that juror. (See R. at 35-36.) After closing arguments, when the judge was charging the jury, the judge reiterated the "fact that a defendant is arrested, charged, indicted in this case is not evidence. . . . It cannot be used by you in any fashion in determining the guilt or the innocence of a defendant before this Court." (R. at 615.)

Pursuant to Martinez, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)); see also Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013). If the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. Martinez, 132 S. Ct. at 1319. In the instant case, the judge excused Juror Number 127 and twice advised the jury that the indictments could not be used as evidence. Petitioner is therefore not entitled to federal habeas relief on this claim of ineffective assistance of counsel. See Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."); see also United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998) ("We generally presume that a jury will follow cautionary instructions regarding potentially prejudicial evidence.").

## B.    **Ground Two**

Petitioner asserts in Ground Two that his rights pursuant to the Confrontation Clause were violated due to counsel's ineffectiveness. (Dkt. No. 1.) Petitioner states,

> Counsel introduced a statement from an alleged witness of the crime during the cross-examination of Lieutenant Smith which was hearsay-within-hearsay. Petitioner never had an opportunity to question this witness about this statement because he did not testify at trial which is a violation of his right to confront his accuser. The victim testified that he was unaware of who shot him.

(Id.)

Respondent contends that Ground Two was not exhausted, as it "was not presented to the state supreme court after the PCR court judge rejected it on the merits." (Dkt. No. 17 at 11.) The undersigned disagrees; Petitioner clearly raised this issue in his *pro se* response to the Johnson petition. (See Dkt. No. 17-15 at 3 of 5.) However, the undersigned does recommend concluding that Petitioner is not entitled to relief on the merits of Ground Two.

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is

12

doubly" deferential. <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington</u>, 562 U.S. at 105.

The PCR judge in this case found Petitioner's "testimony regarding Counsel's ineffectiveness is not credible while also finding Counsel's and Appellate Counsel's testimony credible." (R. at 768.) The PCR judge rejected Petitioner's claim of ineffective assistance of counsel as follows:

> Applicant alleges Counsel was ineffective for introducing a statement from Mr. Brown, who did not testify at trial, which named Applicant and co-defendant, Monte Haskell, as the perpetrators of the crime. Applicant testified he was not afforded the opportunity to cross-examine Mr. Brown, and this resulted in prejudice.

> Counsel testified he introduced this statement during cross-examination of John Smith, one of the State's witnesses who investigated this case. Counsel stated he believed Mr. Brown relayed false information to law enforcement, and this information was the basis of the arrest warrants for Applicant and co-defendant. (*See transcript pp. 424-432; 593-94*). Counsel testified his strategy was to show the State was prosecuting a crime based on false information and a false arrest. Counsel also stated he introduced the statements not to prove that co-defendant shot Victim, but to show John Smith's state of mind in obtaining the arrest warrants for Applicant and Haskell.

> Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. <u>Whitehead v. State</u>, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* <u>Dempsey v. State</u>, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* <u>McLaughlin v. State</u>, 352 S.C. 476, 575 S.E.2d 841 (2003). Counsel testified he introduced this statement to prove the State was prosecuting a crime based on a false arrest. Counsel also stated and argued at trial this statement was offered to show the investigator's mindset when procuring an arrest warrant in this case. I find Counsel articulated valid reasons for introducing this statement on the cross-examination of John Smith, and Applicant has not shown that Counsel was deficient in that choice of tactics. I, therefore, find that Applicant has failed to meet his burden of proving counsel's performance was deficient or that he was prejudiced thereby. Accordingly, this allegation is denied.

(R. at 769-70.)

At the PCR hearing, counsel testified as to his strategy in this case:

> And–and–and I think that, you know, a lot of the strategy centered around Torey Brown and–and whether or not the investigation and the state's theory of the

13

case should be believed. One of the things that came out was–is that it was Torey Brown and not the victim in the crime that was feeding information to the Abbeville Police Department about what had happened and that Torey Brown had lied to the police department; that that information came from the victim who had gotten shot. And the police made an arrest based on that lie.

And then, I believe, as Mr. Smith testified during the in-camera hearing, once he found out that was a lie, he had a trip–he had to figure out how to try to put these two guys at the scene that he had already arrested and was aware of the potential liability of this police department for–for making an arrest based on information that wasn't true.

Q. So–

A. And then–then, even to go a step further, the solicitor's office took the position that they could prosecute a case that was based on a false arrest; that none of that mattered. And so we were trying to, you know, expose, basically, that, you know, Torey Brown's lies and the conspiracy between the solicitor's office and the police department to continue with a–an arrest that was based on false information.

Q. And so I guess I'll jump right to it: You brought Mr. Smith's statement in on cross-examination of Mr.– well, you actually brought Mr. Brown's statements in on cross-examination of Mr. Smith; is that right?

A. That–that's correct.

Q. And–

A. And–and–and there was–there was a lengthy hearing about that, because the–the state was trying to–to keep that information out and keep the jurors from finding out what really had gone on.

Q. And did you feel that should've been exposed to the jury?

A. Yes.

Q. And there was an argument that you made in order to get that into evidence?

A. Yes. And–and that's reflected in the transcript.

Q. Okay. And that argument is based on–I think the solicitor objects and Mr. Haskell's counsel objects based on hearsay. And that–can you explain what your reasoning was that it was not hearsay?

A. Well, I–the–the argument that we made and that Judge Couch accepted was–is that it–it went to the state of mind of the police officer, Detective Smith.

Q. Were you trying to prove this was a faulty–that all the arrest warrants were based on the faulty information from Mr. Brown?

A. Well, not faulty information; false information.

Q. False information?

A. Yeah.

(R. at 732-34.)

A review of counsel's closing argument reveals that counsel did, in fact, use Torey Brown in an attempt to show that the state had not proven Petitioner guilty beyond a reasonable doubt. (See R. at 581-93.) During the testimony of Smith, Counsel brought out the fact that Torey Brown told Smith that the victim had identified Petitioner's co-defendant as the shooter and Petitioner as the individual who lured the victim around the building. (See R. at 420-21.) But Counsel also brought out during Smith's testimony that Brown's statement was untrue, as the victim was never able to identify the shooter. (See R. at 421-24; see also R. at 175-77, 185-90, 210, 212-13, 220.) During closing argument, Counsel pointed out that Torey Brown is the one who gave the victim a ride to Abbeville. (R. at 592.) Counsel pointed out that Mario Adams' "statement to the police was false because Torey Brown coached him and threatened him." (R. at 591.) Counsel argued, *inter alia*,

Why would Torey Brown want the police to rely on something that he said that wasn't true? Remember, Torey Brown is the one who went to Alberton, Georgia and brought [the victim] to Abbeville, brought [the victim] to his girlfriend's apartment, Ms. Cole's apartment. . . .
. . .
He's also the one, Torey Brown, because he brought [the victim] to her apartment knew he didn't have a ride back to Alberton, knew he would have been coming back there, knew he would eventually be coming back there.
He's gone off, but he just happens to be the person who gets there so quick that he can take [the victim] to the hospital and claims that [the victim] told him what happened, and to affect this investigation so bad that the police get warrants based on false information, that they put people in jail based on false information, and that

15

everybody gets a motive, Torey Brown and the police, to try to put it off on these two
men.
. . .
       Torey Brown is reason to hesitate to convict. Torey Brown is a reason that you
should not be firmly convinced at the State's case. Torey Brown and how he affected
this investigation and influenced people improperly is reasonable doubt, and you
should find both of these young men not guilty.

(R. at 592-93.)

Counsel indicated his strategy was to use Torey Brown to show the state had not proven its

case against the Petitioner. Counsel was able to show the jury that Torey Brown's statements to

police–statements that were the basis of the arrest warrant for Petitioner–were false. Accordingly,

the undersigned concludes that the state court's rejection of this claim of ineffective assistance of

counsel is not contrary to, or an unreasonable application of, clearly established federal law, nor did

the state court adjudication result in an unreasonable determination of the facts. See Strickland, 466

U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable . . . ."); Meyer v. Branker, 506 F.3d 358, 374 (4th Cir.

2007) ("Holding that such a reasoned determination constituted objectively unreasonable

performance would be worse than folly: it would essentially require capital defense counsel to

present evidence of remorse, even if, in their considered judgment, the evidence would affirmatively

hurt their defendant's case. Strickland does not require any such outcome."). Petitioner is therefore

not entitled to federal habeas relief on Ground Two.

## C.    Ground Three

In Ground Three, Petitioner asserts counsel was ineffective "for not objecting to the solicitor

becoming a witness." (Dkt. No. 1.) Petitioner states,

In response to the witnesses' changing their testimony from their prior statement the
prosecutor proceeded to impermissibly interject his own credibility against the
witnesses. The records demonstrates no less than fourteen instances of such conduct,
but counsel never made any objections. This made the jury focus on the credibility
of the State and not the evidence that was to determine Petitioner's guilt or innocence.

(Dkt. No. 1.)

The PCR court addressed this claim as follows:

Applicant also claims Counsel was ineffective for not objecting to Solicitor Anthony's line of questioning Mr. Norman concerning their prior conversation about a statement Mr. Norman gave to police. Applicant alleges Solicitor Anthony became a witness in the trial and this, in turn, made the jury believe Mr. Norman's testimony. Counsel testified at the hearing, after reviewing the transcript, he should have objected to this line of questioning as there is case law which disfavors a Solicitor making himself a witness.

This Court finds, after a full review of the transcript, Counsel did properly object to Solicitor Anthony's examination of Mr. Norman. Starting on page 235, there was an in camera hearing concerning this issue. Counsel argued that State v. Sierra stands for the proposition that a prosecutor should not become a witness as it confuses his duties between being an officer of the court and a witness. The trial court overruled Counsel's objection, basing its ruling on State v. Lee. In Lee, the South Carolina Supreme Court held, although disfavored, there is no prohibition against a prosecutor essentially becoming a witness for the State. The trial court then allowed Solicitor Anthony to treat Mr. Norman as a hostile witness and ask him leading questions.

In this case, Counsel made a proper objection, thus preserving the issue for appellate review. Additionally, because of the trial court's ruling on this issue, it would have been superfluous to object [to] Solicitor Anthony's questions. Furthermore, this Court finds no prejudice resulted as Mr. Norman refused to answer Solicitor Anthony's questions in a manner which was satisfactory to Solicitor Anthony. Moreover, on cross-examination of Mr. Anthony, Mr. Buergey allowed Mr. Norman to explain he was under pressure when he signed his statement to police and that at trial was not the first time Mr. Norman explained to Solicitor Anthony that his statement contained false information. Lastly, Mr. Norman's testimony was only cumulative to Victim and Ms. Cole's testimony. As above, the overwhelming evidence in this case alleviated any resulting prejudice from Counsel's alleged errors. Accordingly, this allegation is denied.

(R. 773-74 (footnotes omitted).)

The state court's rejection of this claim of ineffective assistance of counsel does not warrant federal habeas relief. As the state court noted, counsel did in fact object, and a conference was held outside the presence of the jury. (See R. at 231-39.) The trial judge directed the prosecutor to "refrain from posing the questions [to Mr. Norman] in a way that suggests that [Mr. Norman] was just talking" to the prosecutor. (R. at 238.) When the solicitor did not comply with the judge's ruling, the judge reminded the solicitor to "ask the questions in the manner" instructed. (R. at 244.) Given that

17

counsel did object to the solicitor "interjecting his credibility" and "basically testifying," counsel cannot be deemed ineffective for failing to object. See Mason v. Allen, 605 F.3d 1114, 1121 (11th Cir. 2010) ("To the extent that Mason argues that the State failed to advise him of his Miranda rights, we find this claim refuted by the record. Accordingly, we cannot say that the state court's ruling on the legality of his confession is contrary to or an unreasonable application of clearly established federal law ."). The undersigned therefore recommends granting summary judgment to Respondent as to Ground Three.

**D.    Ground Four**

Lastly, Petitioner contends in Ground Four that he was denied a "fair trial due to judicial error in regards to jury charges." (Dkt. No. 1.) Specifically, Petitioner states,

> The judge gave a jury charge concerning the definition of malice as it relates to assault and battery with intent to kill. This puts the mindset of the Defendant in issue as opposed to the evidence.

(Id.) Respondent contends Ground Four is not exhausted because it was not presented on direct appeal: "The only challenge to the trial judge's jury instructions presented on direct appeal was that the trial judge erred in his charge on the offense of assault and battery of a high and aggravated nature." (Dkt. No. 17 at 11.)

Respondent is correct that the trial judge's instruction as to assault and battery with intent to kill was not raised on direct appeal. (See Dkt. No. 17-4 at 4, 12 of 15.) It is therefore barred. See supra Section A. Moreover, to the extent Petitioner alleges the jury charge was incorrect as a matter of state law, such a claim is not cognizable herein. See 28 U.S.C. § 2254(a); see also Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law). It is unclear whether Petitioner is attempting to seek relief pursuant to the South Carolina Supreme Court's decision in State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009). However, to the extent he attempts to do so, the undersigned notes that Petitioner's direct appeal concluded before Belcher was decided; he is therefore not entitled to

federal habeas relief on this ground. <u>See Ward v. Warden of Lieber Corr. Inst.</u>, Civ. A. No. 0:11-3277-RBH-PJG, 2013 WL 1187133, at *18 (D.S.C. Feb.15, 2003), adopted at 2013 WL 1187112 (D.S.C. Mar. 20, 2013) (finding that <u>Belcher</u> was not applicable because it was decided after the petitioner's direct appeal was final); <u>Horton v. Warden, Kirkland Corr. Inst.</u>, Civ. A. No. 9:12-2668-CMC-BHH, 2013 WL 57703, at *1 n.1 (D.S.C. Jan. 4, 2013) (discussing <u>Belcher</u> and finding "[t]he determination of when a change in state law becomes effective is purely a state law issue"); <u>Brown v. Cartledge</u>, Civ. A. No. 1:12-139-TLW-SVH, 2012 WL 4712019, at *10 (D.S.C. Aug. 23, 2012), adopted at 2012 WL 4761433 (D.S.C. Oct. 3, 2012) ("Because Petitioner's conviction was affirmed in 2005 and he was on appeal from denial of PCR when <u>Belcher</u> was decided, the change in law did not apply to his case, and the jury charge was appropriate when given."). The undersigned recommends granting summary judgment to Respondent as to Ground Four.

**CONCLUSION**

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 18) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[2]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 5, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[2]    Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).